IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GABRIEL SANTIAGO,

    Petitioner,                    No. 03-CV-5548 ALA HC

    vs.

DERREL ADAMS, Warden,         <u>ORDER</u>

    Respondent.

_____/

    Petitioner is proceeding *pro se* with an application for writ of habeas corpus under 28 U.S.C. § 2254. In 1999, Petitioner was convicted in Madera County Superior Court for second degree burglary. He is currently serving a sentence of twenty-five years to life imprisonment. Petitioner raises two claims in his petition filed May 2, 2003, challenging his conviction and sentence.

**I**

    Petitioner was one of two men involved in a burglary of Parkwood Laundromat in Madera County. On August 5, 1999, James Massetti, the owner of Parkwood Laundromat in Madera County, was emptying the coin boxes on his washing machines and dryers.[1] Mr.

---

[1] The factual information is taken from the unpublished opinion of the Fifth District Court of Appeal. *See* 28 U.S.C. § 2254(e)(1) (providing that "a determination of a factual issue made

1

Massetti left the laundromat at approximately 6:45 a.m.  Before leaving, Mr. Massetti turned on the video surveillance camera, which records images as well as sound.  As he was leaving, Mr. Massetti noted that an off-white pick-up truck was parked in front of the laundromat facing toward the front door.  Mr. Massetti saw one man, with "longish straight hair" sitting in the driver's seat of the pickup.  As Mr. Massetti drove away from the laundromat, he saw another person's head pop up in the passenger's seat area of the pickup.  Mr. Massetti could only see that this person's head was shaved.  Mr. Massetti, who was suspicious about the pickup truck and its occupants, returned to the laundromat about ten minutes later.  Upon his return, Mr. Massetti noticed the pickup truck was now parked with the rear of the pickup facing the open door of the laundromat.  Mr. Massetti wrote down the license plate number of the pickup truck and reentered his laundromat.  Upon his reentry, he saw two males inside.  One was standing next to a change machine, the other was standing just past the change machine and next to a garbage can.  Mr. Massetti later identified the men as Petitioner and co-defendant Randy Wayne Bond.

Shortly after his encounter with Petitioner and Mr. Bond, Mr. Massetti again left the laundromat.  Mr. Massetti went to his residence which was less than ten minutes away.  Mr. Massetti obtained a pair of binoculars and returned to the laundromat.  Mr. Massetti parked his vehicle across the street "katty-corner" from the laundromat.  Using his binoculars, Mr. Massetti watched as Petitioner paced up and down in front of the laundromat near the pickup.  Petitioner went back into the laundromat and then he and Mr. Bond exited.  One of the men was carrying something wrapped up inside of a sheet.  They got into the pickup and drove away.  Mr. Massetti followed them briefly in his vehicle, but fearing he would be noticed, returned to the laundromat.

Upon his return to the laundromat, Mr. Massetti immediately noticed that the change machine was missing.  The legs of the change machine had been cut off, and Mr. Massetti

---

by a State court shall be presumed to be correct," and that this presumption of correctness may be rebutted only by "clear and convincing evidence").

assumed Mr. Bond and Petitioner had taken the machine with them.  However, the machine was later located between a row of washing machines.[2]  Mr. Massetti contacted the Madera County Sheriff's Department and reported the incident.  Mr. Massetti also delivered the August 5, 1999, videotape from his surveillance camera to the sheriff's department, along with a videotape of an earlier incident of July 4, 1999. The July incident involved the discovery by Mr. Massetti on the morning of July 5, 1999, that someone had broken into one of the washing machines and broken a coin box sometime the previous day or night.

On August 5, 1999, Mr. Massetti was shown two separate photographic lineups, each containing one of the suspects. Mr. Massetti identified both Mr. Bond and Petitioner.  After the arrest of Petitioner, Deputy Majeski of the Madera County Sheriff's Department went to Petitioner's house and obtained his wife's consent to search the garage. During the course of the search, Deputy Majeski seized a power saw and a hack saw, which were later introduced into evidence at trial.

On October 18, 1999, in the Madera County Superior Court, Petitioner was charged with one felony count of violating California Penal Code section 459, burglary of a commercial building.  It was also alleged that Petitioner had suffered two prior convictions within the meaning of the three strikes provisions of California Penal Code section 667(b)-(I).

At trial, Mr. Massetti identified Petitioner and Mr. Bond, stating he had no doubt they were the two males he encountered in his laundromat on August 5, 1999.  Mr. Massetti acknowledged under cross-examination he had not identified Petitioner or Mr. Bond at the preliminary hearing, but did not recall being asked to do so either.

Madera County Deputy Sheriff Padgett also testified at trial.  He testified to his observations of the videotapes of July 4, 1999 and August 5, 1999, as they were played before the jury. After viewing both tapes, Deputy Padgett was able to identify Petitioner as one of the

---

[2] There was no testimony indicating that any money was taken from the change machine.

3

individuals depicted in both videotapes. Deputy Padgett knew Petitioner from prior contacts with him. Deputy Padgett also ran the license plate number that had been given to the Madera County Sheriff's Department by Mr. Massetti. The registered owner of the pickup was identified as Josefina Parra, whose daughter was dating Petitioner's step-brother. Deputy Padgett had previously observed the pickup truck parked on Petitioner's lawn. Deputy Padgett's prior contacts with the vehicle and Ms. Parra's family were made on July 23, 1999, during the course of an unrelated homicide investigation.

Only Mr. Bond presented a defense at trial, while Petitioner relied upon the state of the evidence admitted in the prosecution's case-in-chief.

On December 22, 1999, a jury found Petitioner guilty of second degree burglary in violation of section 459.  Petitioner waived a jury trial on his prior convictions. The court found that Petitioner's prior two convictions for first degree burglary and attempted first degree burglary counted as strikes.  On January 31, 2000, Petitioner was sentenced to twenty-five years to life.

## II

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), "[a] state court decision is 'contrary to'. . . clearly established [United States Supreme Court] precedents if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result

different from [the Supreme Court's] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (citing and quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant habeas corpus relief if the state court identified the correct governing legal principle from the Supreme Court's decisions, but unreasonably applied that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court, however, "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous'").

A federal habeas court reviews challenges to the sufficiency of the evidence by determining whether after "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lewis v. Jeffers*, 497 U.S. 764, 781 (1990). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979).

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

### III

### A

Petitioner claims that there was insufficient evidence to support his conviction for second degree burglary. He argues that the prosecutor failed to prove that he unlawfully entered the

laundromat, claiming instead that his entry was with consent. In addition, he claims that California Penal Code section 459 does not prohibit the conduct of entering a commercial building.

First, Petitioner argues that Parkwood Laundromat was "opened for business" at the time he entered the premises, thus Mr. Massetti consented to his entry. Petitioner reasons that if the owner consented to his entry into the business, he cannot be guilty of second degree burglary. Petitioner's arguments do not raise a sufficiency of the evidence issue. Rather, Petitioner is arguing that based on the facts, as a matter of state law, there was no crime of burglary. This issue raises a question of the definition of burglary under California state law. Petitioner does not contend that the conviction is "contrary to" or an "unreasonable application" of established federal law or United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Petitioner, therefore, has failed to provide a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Furthermore, the claim is without merit.

Under California law, "[e]very person who enters any. . . shop, . . . store, . . . or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." Cal. Penal Code § 459. "The entry need not be a trespass to support a burglary conviction." *People v. Frye*, 18 Cal. 4th 894, 954 (1998). "[A] person who enters for a felonious purpose may be found guilty of burglary even if he enters with the owner's or occupant's consent." *Id.*

Petitioner relies on *People v. Guaze*, 15 Cal. 3d 709 (1975) for the proposition that "for a burglary to occur 'the entry must be made without consent.'" Pet. at 10. Petitioner misstates the law. "'The law after *Gauze* is that one may be convicted of burglary even if he enters with consent, provided he does not have an unconditional possessory right to enter.'" *Frye*, 18 Cal. 4th at 955 (quoting *People v Pendleton*, 25 Cal. 3d 371, 382 (1979)). Petitioner has no ownership interest in Parkwood Laundromat, and, thus, he does not have an unconditional possessory right to enter it. Petitioner has failed to demonstrate that there was insufficient

evidence for his conviction regarding the entry element of his second degree burglary charge. *See also People v. Hildreth*, 202 Cal. App. 2d 468, 471 (1962) (holding that the defendant's entry into laundromat with intent to commit theft completed crime of burglary and that it was "of no particular concern that the laundromat was a public place or that the entrance was during business hours").

Second, Petitioner argues that he was convicted for conduct that the California Penal Code does not prohibit. Specifically, he contends that California Penal Code section 459 does not prohibit the conduct of entering a "commercial building." Again, Petitioner has failed to provide a basis for federal habeas relief under this state-law claim. *See* 28 U.S.C. § 2254(d); *Estelle*, 502 U.S. at 67-68. Moreover, Petitioner's interpretation of California law is incorrect.

"Every burglary of an inhabited dwelling house, vessel, . . . or trailer coach . . . or the inhabited portion of any other building, is burglary of the first degree . . . All other kinds of burglary are of the second degree." Cal. Penal Code § 460(a)-(b). The California Court of Appeal has specifically stated that "[b]urglary of a commercial building is second degree burglary." *People v. Trausch*, 36 Cal. App. 4th 1239, 1244 (1995). The Parkwood Laundromat is a commercial building. Thus, any rational trier of fact could have found that the essential elements of the crime of second degree burglary were established beyond a reasonable doubt. Habeas relief is, therefore, inappropriate on this basis.

**B**

Petitioner's second claim is that there was insufficient evidence to support his "three strikes" sentence. Petitioner argues that the government failed sufficiently to "prove beyond a reasonable doubt" his prior convictions for first degree burglary and attempted first degree burglary, as required by California Penal Code section 667 and *In Re Winship*, 397 U.S. 358 (1970). In addition, Petitioner asserts that his conviction for attempted first degree burglary should not be counted as a strike because it is not considered a "serious" felony under California's three strikes law.

1    To prove Petitioner's prior "serious" felony convictions, the prosecution submitted two
2 Abstracts of Judgment, and related fingerprint cards and prison in-take forms, indicating
3 Petitioner's conviction of attempted first degree burglary on June 23, 1992, and first degree
4 burglary on September 4, 1991.  Petitioner claims this evidence was insufficient.  Citing *In Re*
5 *Winship,* Petitioner argues that the trial court's "conclusion that there was sufficient proof of the
6 prior conviction allegations is contrary to the 'beyond-a-reasonable doubt' requirement as
7 established by our U.S. Supreme Court."  Pet. at 16.
8    Petitioner's reliance on *In Re Winship* is misplaced.  That decision holds that "juveniles,
9 like adults, are constitutionally entitled to proof beyond a reasonable doubt when they are
10 charged with violation of a criminal law."  *Id.* at 365.  *In Re Winship* does not require that a
11 prior conviction must be proved beyond a reasonable doubt.  Under California law, documents,
12 similar to those submitted here, were held to constitute substantial evidence in proving the
13 existence of a prior felony conviction.  *People v. Luna*, 113 Cal. App. 4th 395, 398 (2003)
14 (holding that references in abstract of judgment and fingerprint card to conviction of assault
15 causing great bodily injury with a deadly weapon constituted substantial evidence of a prior
16 serious felony under California's three strikes law).
17    Petitioner's contention that the crime of first degree burglary and attempted first degree
18 burglary are not considered "serious" felonies is also without merit.  These crimes are
19 enumerated in California Penal Code sections 1192.7(c)(18) and (c)(39) as serious felonies: "(c)
20 As used in this section, 'serious felony' means any of the following: . . . (18) any burglary of the
21 first degree; . . . (39) any attempt to commit a crime listed in this subdivision other than an
22 assault . . . ."
23    In accordance with the above, IT IS HEREBY ORDERED that Petitioner's application
24 for habeas corpus relief under § 2254 is denied.

25   DATED: November 15, 2007           /s/ Arthur L. Alarcón
                                         UNITED STATES CIRCUIT JUDGE
26                                       Sitting by Designation